UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JONATHAN HOFFMAN,

        Plaintiff,

v.                                        Case No. 15-C-940

CAROLYN COLVIN,

        Defendant.

**DECISION AND ORDER**

Plaintiff filed this action challenging the decision of the Commissioner denying him disability benefits. The Plaintiff alleges that the ALJ erred in his treatment of both consulting and treating physicians' opinions, his credibility determination, his consideration of the listings, his interaction with the vocational expert, and his treatment of the vocational expert's qualifications.[1] For the reasons that follow, the decision of the Commissioner will be remanded for further proceedings.

**I. Background**

The Plaintiff had been working operating trucks and heavy machinery for some 28 years

---

[1] Within each subsection of the brief there are multiple sub-arguments, sometimes consisting of no more than a single sentence, all of which give the impression that the Plaintiff believes the ALJ made not just five or six errors, but hundreds. For some reason, this is common in Social Security briefing. Counsel is reminded that "the shotgun approach may hit the target with something but it runs the risk of obscuring significant issues by dilution." *Gagan v. Am. Cablevision, Inc.,* 77 F.3d 951, 955 (7th Cir. 1996). Social Security cases are particularly fact-intensive and require a great deal of a court's resources, which means they would benefit the most from streamlined briefs that highlight the claimant's best grounds for relief rather than identifying a laundry list of minutia.

until he alleges a neck surgery rendered him unable to continue working due to pain and headaches. He also alleges mental health issues, including depression, primarily due to his pain and inability to work. He stopped working after the surgery in February 2011 and returned to work in June 2013. The issue, therefore, is whether he was properly found to be not disabled during that period.

**II. Analysis**

In reviewing a decision of an ALJ on a claim for Social Security disability benefits, this court may not reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute its own judgment for that of the Commissioner of Social Security; rather, the court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") Despite the deference accorded to the ALJ, however, a reviewing court must not "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The Commissioner's decision cannot stand if the ALJ fails to build a logical bridge from the evidence to his conclusion. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir.2000). While the ALJ need not provide a "complete written evaluation of every piece of testimony and evidence," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995), his decision must reflect a fair assessment of evidence and be free of fatal gaps and contradictions. *Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1989). Still, a reviewing court must "give the opinion a commonsensical reading rather than nitpicking at it." *Id.* at 564.

**A. Credibility**

The Plaintiff first argues that the ALJ erred by not properly evaluating the Plaintiff's

credibility. Although the ALJ's decision is otherwise quite thorough, it does not appear that the ALJ made a specific finding as to the Plaintiff's credibility, except inasmuch as the denial of benefits suggests that the ALJ implicitly found aspects of the Plaintiff's testimony incredible.[2] The ALJ cited a number of factors that the ALJ *might* have used to evaluate the Plaintiff's symptoms. For example, the ALJ cited the fact that the Plaintiff engaged in certain daily activities, such as boating and preparing a few meals, and that his physician recommended somewhat conservative over-the-counter medication treatment. (R. 29-30.) The Plaintiff could also walk for 15 minutes and sit for 30, shop for groceries and get the mail. (R. 28.) He also received unemployment benefits for part of the period. However, the ALJ almost never articulated whether any of these factors played a role in evaluating the Plaintiff's credibility or the consistency of his statements with objective medical evidence. Arguably, the ALJ did provide one explanation for an apparent contradiction. After the Plaintiff returned to work, the ALJ noted that "he stated that his work was not going very well; however, he admitted that his employer had not complained about his job performance." (R. 28.) From this statement, one may infer that the ALJ believed the Plaintiff was exaggerating his symptoms, but the fact that there are no complaints about an employee's performance does not mean the employee is not experiencing significant pain.

The deficient credibility determination is problematic, the Plaintiff argues, because a finding that he was less than fully credible was implicit in the ALJ's conclusion. Most salient is the fact

---

[2]The parties have not suggested that new regulation 16-3p, which eliminates consideration of "credibility" in a normative or character sense, changes the underlying analysis here. "A comparison of the old ruling with the new interpretation ruling reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms." *Lockwood v. Colvin,* No. 15 C 192, 2016 WL 2622325, at *3 (N.D. Ill. May 9, 2016).

3

that the ALJ asked the Plaintiff whether he could have worked at a fully sedentary job, such as an office position, and the Plaintiff responded negatively, stating that he would need not only to be able to sit and stand but also to lie down. (R. 51.) If believed, then the Plaintiff would not have qualified even for the sedentary work the ALJ ultimately found was available to him. Implicitly, the ALJ rejected that testimony, finding it not credible in light of other evidence. But an implicit credibility finding does not allow a reviewing court to consider whether the ALJ built the requisite logical bridge. It is true that an ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007)). Here, it is not possible to determine which evidence the ALJ relied on to discount the Plaintiff's claim that his pain (including headaches) was severe enough that he would need to lie down during the day. Instead, the ALJ merely cited a number of things (daily activities, medications, etc.) without tying together how they were inconsistent with the Plaintiff's testimony. Because the rejection of that testimony was only implicit in the ALJ's finding, this court cannot meaningfully review the credibility conclusion even under a deferential standard. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) ("While the ALJ did list Zurawski's daily activities, those activities are fairly restricted (e.g., washing dishes, helping his children prepare for school, doing laundry, and preparing dinner) and not of a sort that necessarily undermines or contradicts a claim of disabling pain.") *Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003) ("nothing in Social Security Ruling 96–7p suggests that the reasons for a credibility finding may be implied.

4

Indeed, the cases make clear that the ALJ must specify the reasons for his finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony.") Accordingly, remand is required for a credibility determination.

**B. Consulting Medical Opinions**

The Plaintiff also argues that the ALJ erred in his weighing of the consulting medical opinions by considering only the opinions that were not favorable to the Plaintiff. In addition, he argues that the ALJ did not incorporate the limitations from the consultants' medical opinions into the questions he posed to the vocational expert ("VE").

Consulting physicians Drs. Foster and Walcott both limited the Plaintiff to sedentary exertion with only limited overhead reaching. The Plaintiff's challenge to their opinions seems partly to be a challenge to the very nature of consulting physicians: he argues that they did not personally examine him and were not specialists in any of his symptoms. To the extent that is the Plaintiff's argument, it is rejected as vague and overly generalized, given that such an argument could be made in practically every Social Security case. The question is whether the ALJ reasonably considered the medical evidence, as explained below.

**1. Mental Limitations**

The Plaintiff also argues that the ALJ did not incorporate any of the consulting examiners' mental restrictions into the questions posed to the VE, which means the restrictions are also absent from the RFC. Dr. Donahoo, a consulting psychologist, completed a mental RFC form and indicated "moderate" limitations in some areas, including completing a normal workday and workweek without interruptions, and performing at a consistent pace without an unreasonable number and length of rest periods. (R. 85-86.) The ALJ asked the VE to assume an individual who

5

was limited to routine, 2-3 step tasks and who could be off-task up to 10 percent of the workday. He would not be involved in fast-paced production and should experience few workplace changes. (R. 66.) The ALJ crafted an RFC that incorporated these limitations:

> The claimant was limited to routine 2-3 step tasks that allowed him to be off-task up to 10% of the workday, in addition to regularly scheduled breaks. The claimant's work was limited such that he was unable to perform fast-paced production tasks. His work must have required few, if any, workplace changes. The claimant's work must have required no more than occasional interaction with supervisors and the public.

(R. 31.)

The Plaintiff argues that these limitations do not fully account for the limitations the consulting examiners found. In particular, he wonders what reasonable employer would hire someone who had "moderate" restrictions in completing a workday and week without interruptions from psychologically based symptoms. As discussed at length elsewhere, the Seventh Circuit has forbidden ALJs from translating moderate limitations into a generic limitation to "simple, routine tasks," or the like. *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin,* 758 F.3d 850, 858 (7th Cir. 2014). In addition, the Seventh Circuit has concluded that limitations noted in the mental RFC worksheet may not be ignored. However, it has also concluded that "an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." *Varga,* 794 F.3d at 816. Here, that is exactly what happened. Dr. Donohoo wrote that the Plaintiff was "moderately limited" as to his ability to complete a normal workweek and perform at a consistent pace without interruption. (R. 86.) But immediately after that, she completed a narrative assessment that explained what she meant in practical terms: Plaintiff's concentration and attention "may waver over extended periods. His

6

work pace may not be consistent, or be a bit slower, due to [a] combination of his pain and depressive" symptoms. (R. 86.) By "moderate limitations," therefore, Dr. Donohoo meant that the Plaintiff "may" be "a bit slower" than other workers. These are very modest limitations indeed. Any sensible reading of the mental RFC would produce the conclusion that the Plaintiff is not significantly limited due to mental health issues (and had worked for 28 years apparently without incident), and at most he would only be a "bit slower" than anyone else. (*Id.*) The ALJ was entitled to rely on the narrative statement because it encapsulated the moderate limitations and did not merely suggest that the Plaintiff should be limited to "simple" work. Relying on that assessment, the ALJ crafted an RFC allowing the Plaintiff to be off-task 10% of the workday, ruling out fast-paced work, and limiting him to simple 2 or 3-step tasks, all of which would account for the very modest limitations he had.

The Plaintiff also argues that the RFC did not account for other "moderate" limitations, such as the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and interact with the public, and respond appropriately to changes in the workplace. As noted above, Dr. Donahoo's narrative regarding concentration, persistence and pace explains that he simply might be a "bit slower," (R. 86) and the ALJ accounted for that by allowing him to be off-task 10% of the workday. The ALJ also limited him to simple 2- or 3-step tasks, which accounts for his ability to carry out detailed instructions. (R. 27.) The RFC further limited him to a workplace with "few, if any, workplace changes," thus accounting for his moderate limitation in adapting to change. In addition, the RFC accounted for the Plaintiff's limitation in interacting with the public and accepting criticism from supervisors by limiting him to "no more than occasional interaction with supervisors and the public." (*Id.*)

7

The only "moderate" limitation not specifically accounted for is a limitation in "the ability to set realistic goals or make plans independently of others." (R. 86.) First, it is unclear how such a vague and abstract category—setting goals and making plans—would have any affect on this Plaintiff's ability to perform the kind of sedentary work at issue here. Unlike the ability to concentrate or perform on-task, the ability to "set goals" is of only tangential relevance. The objection is therefore a highly technical one. *Dunn v. Astrue,* 563 F. Supp. 2d 950, 959 (W.D. Wis. 2008) ("plaintiff makes no convincing argument [setting goals and making plans] is essential to the performance of unskilled work.") Second, we need not rely on the bare and unhelpful assertion of a "moderate limitation" because once again Dr. Donohoo explained the limitation in narrative form: "He seems to have poor coping skills and does not react well to stress. He would perform best in a routine work environment w/o frequent changes." (R. 86-87.) This narrative encapsulates in practical terms the very abstract limitation on his ability to set goals or make plans. The upshot is that this Plaintiff should be limited to a routine work environment without many changes, and that is exactly what the RFC provides. The ALJ therefore accounted for all of the mental RFC limitations.[3]

## 2. Physical Restrictions

---

[3] These limitations also account for Dr. King's conclusion that the Plaintiff does not react well to stress and adapts poorly to change. (R. 371.) The Plaintiff seems to believe the ALJ needs to undertake a searching inquiry of all conceivable stressors that a claimant would have in the workplace and then craft some sort of custom-made RFC for the claimant. Is the claimant afraid of spiders? Is he sensitive to criticisms of his weight? Is he stressed out by loud noises? We do not know. An ALJ is not an employment concierge, however. The psychologists said the Plaintiff reacts poorly to change, and the ALJ accounted for that. They also said his stress would best be accounted for by a routine workplace environment. (R. 86-87.) The ALJ accounted for that, too. Beyond that, the ALJ need not conduct an *ad hoc* psychological exam of the claimant to find out what else might cause him stress. He is entitled to rely on the record and the conclusions of the psychological experts.

Dr. Kessel performed a consulting examination on September 12, 2012. In his summary, Dr. Kessel indicated that the Plaintiff should sit, stand and walk as needed. (R. 367.) The Plaintiff argues that the ALJ erred by failing to explain why he did not include the ability to alternately sit, stand and walk in the RFC.

The ALJ *did* explain why he did not include such a limitation, however. He stated that although he gave Kessel's opinion partial weight, and adopted postural and environmental limitations from the report, he did not adopt it fully. (R. 30-31.) Instead, he stated that he relied more heavily on the state agency consultants, who did not impose such restrictions, as well as Plaintiff's treating neurosurgeon, Dr. Dagam, who also did not impose a sit/stand/walk restriction. (R. 309.) Thus, it is clear that the ALJ weighed the medical evidence and chose to credit the treating physician who had seen the Plaintiff repeatedly over the consultant examiner, who saw him only once. The ALJ is entitled to make such determinations.

**C. Treating Physicians**

The Plaintiff also believes the ALJ erred in handling the recommendations of Plaintiff's treating physicians. Dr. Dagam imposed permanent restrictions on the Plaintiff following a February 29, 2011 exam. (R. 309.) These included not lifting more than 10 pounds, no pushing or pulling, no working overhead, no shoveling, and no operation of machinery. (*Id.*) Yet the ALJ's question to the VE and the resulting RFC do not include limitations on pushing and pulling, working overhead, or operating machinery.

While it is true that the ALJ did not incorporate these limitations explicitly, they are implicitly encompassed by the limitation to sedentary work. In particular, the vocational expert identified jobs like inspector, office assistant and sedentary security guard, none of which would

9

require pushing or pulling, working overhead or operating the kind of machinery that would trigger the Plaintiff's pain. An ALJ does not need to specifically address every single limitation when he imposes a broad restriction on anything other than sedentary work. "By definition, sedentary work does not require pushing and pulling." *Burrell v. Colvin,* No. 1:13-CV-90, 2014 WL 3079489, at *7 (N.D. Ind. July 7, 2014).

**D. The Listings**

The Plaintiff also argues that the ALJ failed to determine whether any of the Plaintiff's medical conditions met or were equivalent to any of the listed impairments. In particular, the ALJ failed to account for the Plaintiff's carpal tunnel syndrome and failed to consider it in combination with his other conditions. The ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met any of the listings. He considered listing 1.04, disorders of the spine, but concluded that the Plaintiff had no trouble with balance, ambulating or using his arms. (R. 25.) The Plaintiff notes that carpal tunnel is not a spinal disorder and suggests that it must be considered in combination with his other impairments. But the Plaintiff's argument is merely conclusory. Absent is any suggestion as to how carpal tunnel, when combined with the Plaintiff's other conditions would have tipped the scales enough that his impairments would combine to meet a listing. Plaintiff also suggests, again without elaboration, that the state agency reviewers' opinions were "out of date," but does not explain what crucial records they would have needed to form a more thorough opinion. The physician reviewer concluded that the listings were not met. (R. 81.) "[T]he Court will not independently analyze the evidence before the state-agency experts, compare it to the evidence in the four later-submitted reports, weigh the two, and determine if the state-agency experts' opinions can stand. That was [claimant's] her burden." *Hill v. Colvin,* No.

10

1:12-CV-1060-DKL-RLY, 2013 WL 5487862, at *4 (S.D. Ind. Sept. 27, 2013).

**E. Vocational Expert / RFC**

The Plaintiff also argues that the ALJ failed to ask appropriate questions of the vocational expert. The ALJ asked the VE to assume a hypothetical individual who could "stand/walk about six hours collectively and sit about six hours collectively." (R. 66.) In Plaintiff's view, this was error because it contradicts the definition of sedentary work, which would involve sitting for 6 hours in an 8-hour workday, not standing or walking for six hours. This ignores the context of the question. First, the ALJ was asking whether the Plaintiff could perform his past work as a truck driver. Second, once that question had been answered, the ALJ then asked "would there be other unskilled *sedentary* work that could be performed?" (R. 67.) The VE responded with inspector, office helper and sedentary security work. (R. 67-68.) Thus, it is clear that both the ALJ and the VE understood that they were talking about sedentary positions, not positions in which the individual would need to walk or stand for 6 hours.

The Plaintiff also argues that, in stating that the Plaintiff could be off-task up to 10% of a workday, the ALJ pulled that number out of thin air. This is a case of a plaintiff wanting to have it both ways. As noted earlier, the ALJ had to account (as the Plaintiff himself insists) for "moderate limitations" in pace, persistence and concentration. Under Seventh Circuit precedent, ALJs cannot simply limit claimants to "simple, routine tasks" to account for such limitations; they must be more specific. Thus, the ALJ was left to come up with a way to incorporate those limitations into the RFC, i.e., he had to translate whatever limitations the claimant had into a practical limitation to pose to the vocational expert. As noted earlier, Dr. Donohoo simply found that the Plaintiff might be "a

11

bit slower" than other workers. (R. 86.) Not unreasonably, the ALJ arrived at a figure of 10% to accommodate that limitation.

**F. Vocational Expert Testimony**

Finally, the Plaintiff notes that the record contains no explanation as to where the vocational expert's jobs information came from. Although the expert testified that his information was consistent with the Dictionary of Occupational Titles (R. 69), that publication does not contain the numbers of jobs available. Thus, in the Plaintiff's view the expert simply fabricated the numbers and cannot be relied upon. "Asked at argument where the job figures we just quoted from the administrative law judge's opinion came from, the Social Security Administration's lawyer said she had no idea . . . . The administrative law judge said she'd 'determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles'. . . . but she was wrong, because the DOT doesn't contain statistics." *Alaura v. Colvin,* 797 F.3d 503, 507 (7th Cir. 2015).

It is true that the Seventh Circuit has questioned how vocational experts obtain their statistics. *Id.; see also Browning v. Colvin,* 766 F.3d 708, 709 (7th Cir. 2014); *Herrmann v. Social Security Administration,* 772 F.3d 1110, 1112–14 (7th Cir. 2014). But, as the government notes, the court has not explicitly reversed an ALJ's conclusion simply because the vocational expert's testimony did not explain where his statistics were derived. In *Alaura, supra*, the court merely said that "[w]e need to say something about the vocational expert's conclusion . . ."—classic *dicta*, as the government argues. Here, Plaintiff was represented by counsel at the hearing, and counsel declined to question the VE's data. That would have been the time to ask, and so the issue is rightly deemed waived. When a claimant's attorney does "not question the basis for the vocational expert's

12

testimony, purely conclusional though that testimony was, any objection is forfeited." *Barrett v. Barnhart,* 355 F.3d 1065, 1067 (7th Cir. 2004) (citation omitted).

**III. Conclusion**

For the reasons given above, the decision of the Commissioner is remanded for further proceedings consistent with this opinion.

Dated this 20th day of September, 2016.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court